**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANKLYN ROOSEVELT BOWRIN,
Petitioner,

v.

No. 97-2276

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order

of the Board of Immigration Appeals.
(A21-114-011)

In Re: FRANKLYN ROOSEVELT
BOWRIN,                                                             No. 98-592
Petitioner.

On Petition for Writ of Habeas Corpus.

(CA-98-2027-S)

Argued: March 1, 1999

Decided: October 20, 1999

Before ERVIN,* MICHAEL, and MOTZ, Circuit Judges.

_____

*Judge Ervin prepared the opinion in this case, but died prior to the
time the decision was filed. The remaining members of the panel con-
tinue to concur in what Judge Ervin wrote. The decision is filed by a
quorum of the panel pursuant to 28 U.S.C. § 46(d) (1994).

No. 97-2276 dismissed and No. 98-592 reversed and remanded by published per curiam opinion.

_____

**COUNSEL**

**COUNSEL:** Lee P. Gelernt, AMERICAN CIVIL LIBERTIES UNION, New York, New York; David Goren, LAW OFFICE OF DAVID GOREN, Silver Spring, Maryland, for Petitioner. Jeffrey Jay Bernstein, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Richard M. Evans, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

PER CURIAM:

In 1996, Congress passed two statutes that narrowed the rights of certain classes of immigrants and restricted federal court jurisdiction to review these immigrants' claims. They are the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). This case requires us to determine the effect of these statutes on federal court jurisdiction to grant a writ of habeas corpus sought by an immigrant in the custody of the Immigration and Naturalization Service ("INS") awaiting deportation. We hold that these two statutes do not preclude federal court review of habeas corpus petitions raising questions of pure law filed by immigrants imprisoned under a final order of deportation.

I.

Bowrin is a British citizen born on the island of Nevis. He entered the United States on April 2, 1977 as the dependent of a temporary

2

worker. On June 6, 1978, Bowrin adjusted his immigration status to that of a lawful permanent resident. Since that time, Bowrin married a U.S. citizen and has three children who are also U.S. citizens.

On May 10, 1994, Bowrin was convicted by the Circuit Court for the County of Prince Georges, Maryland for conspiracy to possess marijuana with intent to distribute. He was sentenced to five years in prison -- with all but 45 days suspended -- and two years probation. Due to his conviction, the INS issued Bowrin a show cause order on May 10, 1994, alleging deportability pursuant to INA §§ 241(a)(2)(B)(i), 8 U.S.C.A. § 1227(a)(2)(B)(i) (West 1999) (conviction of a violation of the Controlled Substances Act) and 241(a)(2)(A)(iii), 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 1999) (conviction of an aggravated felony).

In May, 1995, Bowrin conceded deportability and filed an application for relief from deportation under the Immigration and Nationality Act ("INA") § 212(c). See 8 U.S.C.A. § 1182(c) (West 1994), repealed by IIRIRA § 304(b). The Immigration Judge originally calendared a hearing on Bowrin's application for January 19, 1996, but rescheduled it three times before finally hearing the case.

Meanwhile, on April 24, 1996, Congress enacted the AEDPA. Among the AEDPA's numerous amendments to the INA was the addition of § 440(d) which precluded aliens

> deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)

from relief under INA § 212(c). AEDPA § 440(d).

In light of the AEDPA amendments to INA § 212(c), the INS moved to dismiss Bowrin's petition for relief in August 1996. The Immigration Judge denied the motion, citing the Board of Immigration ("BIA") decision in In re Soriano, Int. Dec. 3289, 1996 WL 426888 (BIA June 27, 1996). In Soriano, the BIA held that AEDPA

3

§ 440(d) did not apply retroactively to cases, like Bowrin's, where the § 212(c) application had been filed before the AEDPA took effect. Since Bowrin's application was filed before the AEDPA was passed, the Immigration Judge held that the AEDPA did not bar Bowrin's application for § 212(c) relief. Relying on the BIA's Soriano opinion, the Immigration Judge granted Bowrin's application for relief pursuant to § 212(c) on November 7, 1996. The INS appealed the decision to the BIA in November 1996, contesting only Bowrin's eligibility for relief, not the merits of his § 212(c) application.

While the INS's appeal was pending before the BIA, the Attorney General vacated the BIA's holding in Soriano. See In re Soriano, Int. Dec. 3289, 1996 WL 426888, at *38 (Op. Att'y Gen. Feb. 21, 1997). The Attorney General held that the AEDPA's amendments to § 212(c) applied to all applications regardless of when they were filed. Based on the Attorney General's reversal, the INS moved for summary judgment on its appeal pending before the BIA. The BIA sustained the INS's appeal and ordered Bowrin deported on grounds that the Attorney General's ruling in Soriano rendered Bowrin ineligible for § 212(c) relief. Bowrin appealed the BIA's ruling to this Court in September 1997.

While awaiting action on his direct BIA appeal, Bowrin filed a habeas corpus petition in the United States District Court for the District of Maryland. The district court dismissed the petition for lack of jurisdiction recommending that in the interest of justice the case be transferred to this Court. On November 13, 1998, we consolidated Bowrin's two appeals and calendared the case for oral argument.

II.

First we must determine whether we have jurisdiction to hear Bowrin's direct appeal from the BIA's decision denying his eligibility for § 212(c) relief. At oral argument, Bowrin's counsel acknowledged and we agree that our recent decision in Hall v. INS, 167 F.3d 852 (4th Cir. 1999), is dispositive on this issue. In Hall, we held that the "IIRIRA removes our jurisdiction over the appeals of those aliens who are deportable by reason of their conviction of certain offenses." 167 F.3d at 854.

4

We limited our Hall ruling, however, concluding that this jurisdiction-limiting procedure was triggered only when the requisite jurisdictional facts are present; the petitioner must be (1) an alien, (2) who has been convicted of one of the statutorily enumerated offenses requiring deportability. See id. at 855. Our jurisdiction turns on proof of these facts and, if Bowrin's appeal presents these jurisdictional facts, we must dismiss his appeal.

Bowrin conceded deportability due to his criminal convictions prior to his hearing before the Immigration Judge. This concession means that Bowrin has acquiesced that his case presents the necessary jurisdictional facts and his counsel as much as conceded this at oral argument. On that ground, we must dismiss his direct appeal.

III.

Having dismissed Bowrin's direct appeal, we now address his habeas corpus petition. Because jurisdiction is the first hurdle to be cleared in every case, the primary question we must address is whether the district court properly held that the AEDPA and the IIRIRA divested it of jurisdiction over Bowrin's habeas corpus petition. The jurisdictional issues presented here have been chronicled extensively in several federal appellate opinions and we do not endeavor to repeat that which has already been detailed effectively and at length. Our statutory analysis is only complete, however, if it is given in context.

Before 1952 brought changes in the area of immigration law, habeas corpus was the traditional method by which aliens obtained review of deportation decisions pursuant to the general habeas corpus statute, 28 U.S.C.A. § 2241 (West 1994). Since its inclusion in the Judiciary Act of 1789, § 2241 has given district courts jurisdiction to grant writs of habeas corpus to petitioners who are held in custody by the federal government in violation of the Constitution, laws, or treaties of the United States. See 28 U.S.C.A. § 2241. Under this statute, federal courts considered not only constitutional claims but claims of statutory interpretation as well. See Goncalves v. Reno, 144 F.3d 110, 123-24 (1st Cir. 1998).

In 1952, Congress enacted new statutes that channeled review of most deportation matters to the courts of appeals. See Shah v. Reno,

5

184 F.3d 719, 721 (8th Cir. 1999). Changes made in 1961 further tightened the system by requiring nearly all deportation decisions to be heard exclusively by the courts of appeals. See id. Residual immigration-specific habeas jurisdiction remained pursuant to INA § 106(a)(10). See 8 U.S.C.A. § 1105a(a)(10) (West 1994), repealed by AEDPA § 440(a). Section 106(a)(10) provided that any alien held in custody under an order of deportation could obtain judicial review by habeas corpus. This subsection was designed to ensure that aliens with access to ordinary judicial review could also file habeas petitions if they were in custody. See Goncalves, 144 F.3d at 121. The provision promised that such aliens would have "a supplemental collateral remedy," id., and applied only to aliens that could obtain review under the traditional judicial review process. Those ineligible for habeas corpus relief under INA § 106(a)(10) were still able to obtain habeas review under § 2241 even in the face of statutory language prohibiting all other review. See Heikkila v. Barber, 345 U.S. 229, 235-37 (1953).

Under this scheme, aliens like Bowrin who conceded deportation, but still desired § 212(c) relief, could file a petition for direct review in the court of appeals following a final deportation order by the BIA. The court of appeals could then review questions of constitutional and statutory law, as well as issues of discretion and fact -- although under a narrowed standard of review. See Shah , 184 F.3d at 721.

The passage of the AEDPA in 1996 dramatically changed this system. The AEDPA included jurisdictional changes -- including the repeal of INA § 106(a)(10) -- and the addition of AEDPA § 440(d) which excluded aliens convicted of certain enumerated criminal offenses from eligibility for § 212(c) discretionary relief.

The IIRIRA was enacted several months later on September 30, 1996, and further altered the statutory landscape. Although passed in 1996, the IIRIRA did not take effect until April 1, 1997, but includes transitional rules which apply to cases, like Bowrin's, pending prior to its effective date. See IIRIRA § 309(c); Selgeka v. Carroll, 184 F.3d 337, 341 (4th Cir. 1999). Section 309(c)(1) of the transitional rules provides that the new IIRIRA rules for removing aliens, including the new restrictive judicial-review procedures of INA § 242(g), 8

6

U.S.C.A. § 1252(g) (West 1999), do not apply to aliens who fell within the transitional rules.

In apparent conflict with these transitional rules, IIRIRA § 306(c)(1) directs that § 1252(g) shall apply without limitation to all past, pending, and future cases. See Selgeka, 184 F.3d at 341. Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C.A. § 1252(g) (West 1999). A literal reading of this provision seems to deprive all federal courts of jurisdiction"[e]xcept as provided in" § 1252(g). Id.

If the jurisdiction-excluding language of § 1252(g) precludes all other sources of jurisdiction in deportation cases and incorporates the other jurisdiction-related provisions provided in§ 1252, then it would directly conflict with the transitional rules as set out in § 309(c)(1). Furthermore, on its face, § 1252(g) appears to insulate from review by any court decisions of the Attorney General on all deportation-related cases including final orders of deportation. Such a statutory scheme would likely raise substantial constitutional problems. Fortunately, recent Supreme Court authority has clarified both of these issues.

In Reno v. American-Arab Anti-Discrimination Committee, the Supreme Court deciphered this apparent conflict and helped us avoid constitutional problems by construing § 1252(g) narrowly. 525 U.S. 471, 119 S. Ct. 936 (1999) ("AADC II"). Although AADC II did not directly present the question of whether § 1252(g) precludes judicial review of habeas corpus petitions in district court, as we noted in Selgeka, the Court "rejected the notion that section 1252(g) `covers the universe of deportation claims.'" Selgeka , 184 F.3d at 341 (quoting AADC II, 525 U.S. at ___, 119 S. Ct. at 943). The Court concluded instead that § 1252(g) applies only to the "three discrete actions that the Attorney General may take: her`decision or action'

to `commence proceedings, adjudicate cases, or execute removal orders.'" AADC II, 525 U.S. at ___, 119 S. Ct. at 943. The Supreme Court reasoned that § 1252(g) does not apply to "all claims arising from deportation proceedings," id., because § 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her discretion to initiate or prosecute these specific stages in the deportation process. See id.; see also Selgeka, 184 F.3d at 341-42; Shah, 184 F.3d at 722. We read the Court's AADC II ruling, therefore, to hold that § 1252(g) does not apply to agency interpretations of statutes as these decisions do not fall into any of the three categories enumerated in§ 1252(g). Accord Shah, 184 F.3d at 722. District court jurisdiction over habeas corpus petitions, like Bowrin's, therefore, is not prohibited by § 1252(g) because it is inapplicable to final deportation orders.

If § 1252(g) does not govern our review of Bowrin's § 2241 habeas petition, then what does? The transitional rules of the IIRIRA, specifically § 309(c)(4)(G). As previously stated, because he was already involved in deportation proceedings when the IIRIRA took effect on April 1, 1997, Bowrin's petition is subject to the transitional rules. Subsection G provides that "there shall be no appeal permitted in the case of an alien who is . . . deportable by reason of having committed" certain enumerated criminal offenses, a list including that for which Bowrin has been convicted. IIRIRA § 309(c)(4)(G). Under § 309(c)(4)(G), therefore, an "appeal" is explicitly unavailable to Bowrin.

We believe that when it used the term "appeal," Congress meant the process of ordinary appellate review commenced with the filing of a notice of appeal or a petition for review in the courts of appeals. See Shah, 184 F.3d at 722-23. Although Bowrin filed a direct appeal over which we have already determined we lack jurisdiction, he also filed a petition for a writ of habeas corpus in the district court, which is the only issue remaining before us. IIRIRA § 309(c)(4)(G) does not mention habeas corpus petitions under § 2241, nor does it appear to preclude district court jurisdiction over such habeas petitions. We do not believe, therefore, that the preclusion of jurisdiction over an alien's direct appeal applies to prohibit general habeas jurisdiction in the district court pursuant to § 2241.

8

The INS argues that, because AEDPA § 401(e) repealed the specific habeas jurisdiction under INA § 106(a)(10), Congress intended to remove all avenues for aliens to pursue any kind of habeas review in district court. Section 401(e) says nothing about repealing § 2241 habeas, however, but merely discusses habeas as provided under § 106(a)(10). We can find no express reference in any of the related statutes explicitly stating that aliens such as Bowrin are prohibited from seeking judicial review in district court on habeas pursuant to § 2241.

Finding no such specific reference to § 2241, we apply the long-standing rule disfavoring repeal of jurisdictional provisions by implication. See Felker v. Turpin, 518 U.S. 651, 660-62 (1996). The applicable provisions of the AEDPA refer explicitly to repealing habeas jurisdiction as provided under INA § 106(a)(10), but there is no mention of § 2241, the general federal habeas statute, even though it was the traditional basis for judicial review of executive decisions in immigration matters. We believe that had Congress intended to eliminate all habeas jurisdiction under § 2241, it would have done so by using the same explicit references it used to repeal INA § 106(a)(10). Its failure to do so, we believe, means that the remedy remains intact. Furthermore, the implicit repeal of federal habeas jurisdiction would potentially raise serious constitutional questions we think are avoidable given this logical statutory construction.

In summary, we join several of our sister circuits in holding that, absent express congressional intent in the language of either the AEDPA or the IIRIRA to eliminate the general federal habeas corpus review pursuant to 28 U.S.C.A. § 2241, the remedy remains available to Bowrin and other aliens similarly situated. See Goncalves, 144 F.3d at 123, cert. denied, 119 S. Ct. 1141 (1999); Henderson v. INS, 157 F.3d 106, 118-19 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999); Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir. 1999); Shah, 184 F.3d at 723-24; Magana-Pizano v. INS, 152 F.3d 1213, 1221-22 (9th Cir. 1998), as amended 159 F.3d 1217, 1218 (9th Cir. 1998), vacated on other grounds, 119 S. Ct. 1137 (1999); Jurado-Gutierrez v. Greene, No. 97-1437(L), 1999 WL 637038, at *7-8 (10th Cir. Aug. 19, 1999). But see LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998) (concluding that AEDPA § 440(a) removed habeas review).

9

IV.

Having determined that the district court had jurisdiction over Bowrin's habeas petition pursuant to § 2241, we next address the scope of that review. The First, Second, Third, Eighth, and Ninth Circuits have all held that § 2241 jurisdiction includes not only constitutional claims, but also statutory claims like the one presented in Bowrin's petition. See Goncalves, 144 F.3d at 124-25 ("The pure statutory claims Goncalves makes here are well within precedent interpreting the core habeas protection provided by § 2241."); Henderson, 157 F.3d at 122 (holding that statutory claims "affecting the substantial rights of aliens of the sort the courts have secularly enforced" are subject to habeas review); Sandoval, 166 F.3d at 238 ("[T]he Supreme Court has repeatedly recognized that aliens may press statutory claims in habeas proceedings."); Shah , 184 F.3d 724 ("[T]he writ . . . would be limited to those kinds of questions normally reviewable on habeas at the time the Constitution was written .. . [which] included statutory issues."); Magana-Pizano , 152 F.3d at 1221, vacated on other grounds, 119 S. Ct. 1137 (1999) (concluding that habeas remedies afforded pursuant to § 2241 include review of statutory questions). The Seventh and D.C. Circuits have taken the opposite position. See LaGuerre, 164 F.3d at 1040 (finding it unnecessary to address this question after determining that habeas corpus jurisdiction pursuant to § 2241 did not survive the enactment of the AEDPA and the IIRIRA but implying that no such jurisdiction remained); Ramallo v. Reno, 114 F.3d 1210, 1214 (D.C. Cir. 1997) (suggesting that § 1252(g) repealed statutory habeas jurisdiction, but not constitutional habeas jurisdiction).

We cast our lot with those circuits that have found that statutory habeas jurisdiction lies firmly within the scope of judicial review of a § 2241 habeas petition. Historically, the Supreme Court has recognized that aliens could obtain review of statutory questions in habeas proceedings, even when "judicial review in the immigration context was reduced to the minimum required by the Constitution." Sandoval, 166 F.3d at 238 (citation omitted). This precedent supports our holding that district court habeas review under § 2241 includes the ability to review Bowrin's petition for both statutory and constitutional questions.

10

In addition, we agree with the First and Second Circuits that the language of § 2241 does not indicate that jurisdiction is limited only to constitutional claims. See Goncalves, 144 F.3d at 123 ("The language of § 2241 itself does not contemplate a limitation of jurisdiction only to constitutional claims."); Henderson, 157 F.3d at 120 n.11 (noting that "[n]othing in the language of either the Antiterrorism Act or the Immigration Reform Act suggests that Congress expressly repealed § 2241, [or] limited its scope") (citation omitted). In the absence of a clear statement by Congress that courts should no longer consider claims of statutory right in immigration cases under § 2241 jurisdiction, we conclude that they continue to have jurisdiction to consider both types of questions.

Further supporting this conclusion is the fact that the INS's argument, that § 2241 habeas review is limited to constitutional questions, is based on a different context in which prisoners in state custody can file successive federal habeas petitions and often have the ability to obtain full judicial process through the entire state and federal systems. See Goncalves, 144 F.3d at 118 n.8; Henderson, 157 F.3d at 120. Bowrin's case is quite different and involves executive detention in which aliens have never had their claims reviewed by any court, federal or state. We find, therefore, that district courts reviewing aliens' habeas petitions filed pursuant to § 2241 may consider both statutory and constitutional questions when presented.

Like our sister circuits, we wish to underscore that our holding here is a narrow one. Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited. Thus, we do not suggest that review of § 2241 habeas petitions is as broad as it was under INA § 106. See Goncalves, 144 F.3d at 125; Henderson, 157 F.3d at 122. We do hold, however, that statutory claims affecting the substantial rights of aliens that have traditionally been judicially enforced are cognizable on § 2241 habeas. Accord id.

V.

For the foregoing reasons, we dismiss Bowrin's direct appeal for lack of jurisdiction. Second, we hold that the district court had jurisdiction to review Bowrin's habeas petition pursuant to § 2241 and

11

that such consideration includes review of statutory as well as constitutional issues. The district court's dismissal of Bowrin's habeas corpus petition is therefore reversed and the case is remanded with instructions to consider the merits of Bowrin's petition.

No. 97-2276 - <u>DISMISSED</u>
No. 98-592 - <u>REVERSED AND REMANDED</u>

12