UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

VALENTINE C. NWANDU,
          *Plaintiff-Appellant,*

and

DIANE NWANDU,
          *Party in Interest-Appellant,*

v.

LOUIS D. CROCETTI, JR.,
          *Defendant-Appellee.*

No. 00-7041

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-00-1372-CCB)

Argued: March 1, 2001

Decided: April 20, 2001

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

**ARGUED:** Michael Laurence Post, SIDLEY & AUSTIN, Washington, D.C., for Appellants. John Stephen Hogan, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Oscar L.

Amorow, AMOROW & KUM, P.A., Hyattsville, Maryland, for Appellants. David W. Ogden, Assistant Attorney General, John J. Andre, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Valentine C. Nwandu, a citizen of Nigeria, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, we affirm the judgment of the district court.[1]

I.

Danish authorities found 692 grams of heroin in Valentine C. Nwandu's ("Nwandu") possession when he attempted to enter Denmark using a fake Nigerian passport issued in the name of Valentine Azuka Hayes in February 1983. On May 17, 1983, Nwandu was convicted of the offense of heroin smuggling and sentenced to a period

---

[1]Nwandu was placed in exclusion proceedings prior to April 1, 1997, and his final order of exclusion was issued after October 30, 1996. Judicial review of his case is therefore governed by the transitional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). *See* IIRIRA § 309 (stating that the transitional changes for judicial review are applicable to final orders of exclusion or deportation entered more than 30 days after the date of enactment of IIRIRA).

of four years incarceration. Denmark deported Nwandu to Nigeria in June 1985.[2]

In July 1985, Nwandu fraudulently obtained a student visa to enter the United States by failing to reveal his prior drug trafficking conviction in Denmark. Subsequently, he married an American citizen and, after his student visa had expired, filed a visa petition and an application for adjustment of status. On May 11, 1994, while this adjustment application was pending, Nwandu applied for and was granted advance parole to leave the United States in order to attend his father's funeral in Nigeria. Advance parole permitted Nwandu to leave the United States without abandoning his application for adjustment of status. When Nwandu returned from Nigeria on May 31, 1994, he was "paroled" into the United States in accordance with the terms of his advance parole.

Shortly thereafter, the Immigration and Naturalization Service ("INS") conducted an investigation on Nwandu's adjustment of status application, which included an adjustment interview on September 6, 1994. During this interview, Nwandu revealed his 1983 drug conviction for the first time. Nwandu was inadmissible to the United States due to, *inter alia*, his prior drug conviction in Denmark, 8 U.S.C. § 1182(a)(2)(A)(i)(II), and the fact that his initial entry into the United States as a student was obtained by fraud. 8 U.S.C. § 1182(a)(6)(C). Consequently, in July 1995, the INS denied Nwandu's visa application. Later, in June 1996, the INS terminated Nwandu's parole status and placed him in exclusion proceedings pursuant to former section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226 (1995). Of special relevance to this appeal, Nwandu was charged with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) on account of his earlier drug conviction.

At an exclusion hearing, the Immigration Judge sustained that charge and found Nwandu to be excludable. Subsequently, Nwandu pursued an application for adjustment of status in conjunction with a

---

[2]Nwandu is permanently barred from entering Denmark based on his conviction, J.A. 108 n.1, and the Danish record of conviction also notes that Nwandu is a person in flight from prosecution in England for possession of five kilograms of hashish in 1982. S.A. 9.

request for waiver under 8 U.S.C. § 1182(h). Nwandu argued at this second hearing that his 1983 conviction in Denmark for smuggling heroin had been expunged, a claim belied by the government's ability to obtain — and provide to the Immigration Judge — a properly certified copy of a 1983 record of conviction for smuggling heroin under the name "Valentine *Chukwudu* Nwandu." S.A. 8-13 (emphasis added). Nwandu offered into evidence only a 1999 Danish document purporting to state that "No entry appears in the Central Crime Register" under the name "Valentine *Chukwuka* Nwandu."[3] S.A. 22 (emphasis added). Based on the totality of the evidence, which included the conviction record, the criminal court's notation that Nwandu acted as a courier, and Nwandu's I-485 application, in which he stated that he omitted mention of his conviction when obtaining his visa to come to the United States, the Immigration Judge found that, "notwithstanding the respondent's certificate of criminal record, which states that there is no criminal record pertaining to him, that the allegations contained in the amended Notice to Appear are sustained and that the respondent is excludable as charged." S.A. 4-5. Nwandu's application for adjustment of status was then pretermitted because no waiver is available under section 212(h) of the INA, 8 U.S.C. § 1182(h), for a drug conviction involving heroin. S.A. 5.

Nwandu timely appealed this decision to the Board of Immigration Appeals ("BIA"). The BIA held that Nwandu had been properly placed in exclusion proceedings, that the Immigration Judge had properly found him excludable on account of his heroin smuggling in Denmark, and that his adjustment application was properly pretermitted. The BIA denied Nwandu's motion to reconsider, and he filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland, which was denied. This appeal followed.

## II.

### A.

Nwandu first argues that he was not subject to exclusion proceedings upon denial of his adjustment application and revocation of

---

[3]Nwandu's search may have been unsuccessful because the record of conviction used a different middle name than his records search.

advance parole, and that, even if he was, he was given insufficient notice that he would be subject to exclusion proceedings if his petition for adjustment of status were denied. The relevant regulation, however, clearly states that an exclusion proceeding, not a deportation hearing, was the appropriate means for deciding Nwandu's status once his application for adjustment of status was denied. The regulation is unequivocal:

> The departure of an [adjustment] applicant who is not under deportation proceedings shall be deemed an abandonment of his or her application constituting grounds for termination, unless the applicant was previously granted advance parole by the Service for such absence, and was inspected upon returning to the United States. *If the application of an individual granted advance parole is subsequently denied, the applicant will be subject to the exclusion provisions* of section 236 of the Act. *No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing.*

8 C.F.R. § 245.2(a)(4)(ii) (1994) (emphasis added).[4] Thus, once Nwandu's adjustment application was denied by the INS, Nwandu was subject to exclusion proceedings.

Nwandu also claims that he was given insufficient notice that he could be subject to exclusion proceedings. Nwandu's advance parole document provided that

> [t]his authorization will permit you to resume your application for adjustment of status on your return to the United States.
>
> *WARNING: Pursuant to 8 CFR 245.3(a)(2), if your application for adjustment of status is denied, you will be subject*

---

[4]In contrast, the regulation at issue in *Joshi* v. *INS*, 720 F.2d 799, 804 (4th Cir. 1983) (discussing former 8 C.F.R. § 245.2(a)(3)), was held to provide that if an applicant was deportable before his authorized absence, he remained deportable after his return.

*to exclusion proceedings under Section 236 of the Immigration and Nationality Act.*

J.A. 110 (emphasis in bold in original).[5] While Nwandu's notice did cite to an incorrect regulation, rather than to 8 C.F.R. § 245.2(a)(4)(ii), we find this to be of no legal significance given that the substance of the applicable regulation was clearly conveyed.[6]

### B.

Nwandu provides no better support for his claim that additional protections were owed to him prior to the Immigration Judge's decision to pretermit his application for adjustment of status and request for a section 212(h) waiver.

In the first place, as a statutory matter, we have no doubt that the Immigration Judge properly pretermitted Nwandu's adjustment application and request for waiver. In order to be statutorily eligible for adjustment of status, an applicant must be admissible to the United States. 8 U.S.C. § 1255(a). Nwandu was found inadmissible to the United States as a result of his Danish conviction for smuggling heroin. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II).[7] No waiver exists for this

---

[5] We also agree with the district court that 8 C.F.R. § 245.2(a)(4)(ii) (1994) was a legitimate exercise of the Attorney General's authority, and a valid regulation for purposes of placing Nwandu in exclusion proceedings.

[6] While Nwandu seeks to rely on an earlier decision of this court where the notice of exclusion was deemed insufficient, the form provided in *Joshi*, 720 F.2d 799, is clearly distinguishable from the one provided in this case. The form provided to Joshi was "unintelligible," providing: "However, you will then be considered an applicant for entry *and if your adjustment in expulsion proceedings* [sic]." 720 F.2d at 802. Despite the incorrect citation in Nwandu's advance parole documents, Nwandu was clearly apprised that he would be subject to exclusion proceedings and *Joshi* — with its quite different notice and different applicable regulation — is inapposite. Moreover, unlike Joshi, Nwandu was represented by counsel at the time he received the advance parole warning. J.A. 181.

[7] It has long been the case that a conviction for smuggling heroin renders an alien inadmissible to the United States, albeit under varying subsections within, and versions of, section 1182, and we have no doubt that Nwandu was inadmissible in 1983.

ground of inadmissibility when the conviction at issue involves heroin. *See* 8 U.S.C. § 1182(h) (waiver allowed for conviction of simple possession of less than 30 grams of marijuana).

Second, with respect to Nwandu's constitutional claim regarding expungement, we note that — even if the facts alleged presented a cognizable due process *claim* — we could find no due process *violation*. For the Immigration Judge did hear evidence with respect to the claimed expungement of the Danish conviction and, weighing the evidence, resolved the issue in favor of the government. We could not say that the ample procedural protections afforded by the hearings before the Immigration Judge, Nwandu's opportunity to present evidence, and the review by the BIA, are constitutionally deficient, particularly where Nwandu himself cannot explain how he was prejudiced in fact, or what more he would do if given the opportunity. Indeed, even at the time of oral argument, Nwandu's counsel was unable to describe a single avenue he would pursue, action he would take, or information he expected to obtain, to strengthen his claim of expungement, beyond the evidence already presented to, and considered by, the Immigration Judge.

We need not resolve that issue, however, because, more fundamentally, an adverse ruling on Nwandu's claim of expungement — based on Nwandu's failure to present evidence sufficient to prove expungement to either the Immigration Judge or the BIA, both of whom found that Nwandu was convicted of smuggling heroin — presents no cognizable due process claim. Indeed, such an adverse ruling does not constitute any constitutional violation at all. We decline to review under the aegis of a habeas corpus petition pursuant to section 2241 what amounts to a factual finding by the Immigration Judge that a conviction for heroin smuggling was extant, not expunged.[8]    *See*

---

[8]Even if the facts were otherwise, we are unconvinced that the expungement of a foreign drug-related conviction is effective to prevent a finding of inadmissibility pursuant to section 212(a)(2)(A)(i)(I). Under the statutory definition of "conviction" set forth in section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A), no apparent effect is given to court actions which purport to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction. Nor do we believe that Nwandu's conviction for trafficking in

*Bowrin* v. *U.S. Immigration and Naturalization Service*, 194 F.3d 483, 490 (4th Cir. 1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited.").

C.

Nwandu also argues that because his guilty plea to possession for heroin in Denmark was tendered prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our decision in *Tasios* v. *Reno*, 204 F.3d 544 (4th Cir. 2000), renders him eligible for discretionary waiver under former 8 U.S.C. § 1182(c) (repealed 1996), even if he is not eligible for waiver under 8 U.S.C. § 1182(h). In *Tasios*, we held that section 440(d) of AEDPA did not bar relief under former section 1182(c) for lawful permanent residents who pled guilty to aggravated felonies, or who conceded deportability prior to AEDPA's effective date, because it was impermissibly retroactive; under section 1182 as amended, discretionary relief is not available for aliens convicted of drug trafficking offenses.

However, AEDPA does not impose a similar retroactive effect in this case because Nwandu, unlike Tasios, and unlike the individual at issue in *Cyr* v. *Immigration and Naturalization Service*, 229 F.3d 406 (2d Cir. 2000), *cert. granted*, 121 S. Ct. 848 (2001), has *never been* a lawful permanent resident, and section 1182(c)'s discretionary relief was *never* available to him. Former section 1182(c) provides only that:

> Aliens *lawfully admitted for permanent residence status* who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a

_____

heroin — an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(B) — would be eligible for expungement pursuant to the Federal First Offender Act ("FFOA"), 18 U.S.C. § 3607, either. For section 3607 applies on its face only to violations of section 21 U.S.C. § 844 (possession) and only to offenses committed by persons less than 21 years-old at the time of the offense; Nwandu was convicted for smuggling heroin, and was 27 years old at the time of the offense.

lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (repealed 1996) (emphasis added). Because Nwandu was never a lawful permanent resident, and never entitled to the benefit of former section 1182(c), *Tasios* simply does not dictate the result in this case.

Nwandu implicitly acknowledges this, but argues that "[a]lthough this section expressly applied to aliens who are lawful permanent residents, [ ] its general principles and approach to deportation waivers *should* also apply" in his case — even though he is not a lawful permanent resident. *See* Appellant's Brief at 26-27. However, AEDPA's repeal of section 1182(c) cannot be seen, with respect to Nwandu, to "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," because discretionary relief was not available to Nwandu prior to AEDPA either. *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 269 (1994). As a result, *Tasios* is unavailing for Nwandu.[9]

---

[9]Nwandu also argues that he is being improperly detained by the INS. However, since Nwandu was placed in exclusion proceedings prior to April 1, 1997, the detention provision of former 8 U.S.C. § 1226(e) (1995) is applicable. *See* IIRIRA § 309(a). That provision provides that because Nwandu is subject to a final order of exclusion and has been convicted of an aggravated felony, his detention pending removal is mandatory. *See* 8 U.S.C. § 1226(e). We have reviewed Nwandu's other claims and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the district court's order denying appellant's motion for a writ of habeas corpus is affirmed.[10]

*AFFIRMED*

---

[10]The INS claims that IIRIRA § 309(c)(4)(A) divested the district court of habeas corpus jurisdiction. We are constrained to disagree based on settled law in this circuit, set forth in *Bowrin* v. *U.S. Immigration and Naturalization Service*, 194 F.3d 483, 489 (4th Cir. 1999) (habeas jurisdiction under section 2241 remains intact absent express congressional intent in the language of either AEDPA or the IIRIRA to eliminate it). The government's reliance, through negative implication, on section 1105a(b), which was made inapplicable to Nwandu by IIRIRA § 309(c)(4)(A), is misplaced because it does not constitute express congressional intent to eliminate section 2241 jurisdiction, and thus fails to meet the standard set forth in *Bowrin*. Consequently, federal habeas corpus review pursuant to 28 U.S.C. § 2241 remains available to Nwandu, albeit only on questions of pure law (i.e., statutory and constitutional claims). *Bowrin*, 194 F.3d at 490. For, while 8 U.S.C. § 1105a(a) and (c) do not expressly provide for habeas review under 28 U.S.C. § 2241, neither do they expressly prohibit it, likely because they are concerned with procedures for the judicial review of orders on direct appeal, and not with habeas relief as provided by section 2241.