Marco **TOLEDO–HERNANDEZ,**
Petitioner

v.

**BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. Department of Homeland Security,** Respondent

No. SA–03–CA–785–RF.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 8, 2005.

Simon M. Azar–Farr, Simon M. Azar–Farr & Associates, San Antonio, TX, for Petitioner.

Gary L. Anderson, Assistant United States Attorney, San Antonio, TX, for Respondent.

**ORDER GRANTING BUREAU'S MOTION TO TRANSFER**

FURGESON, District Judge.

Before the Court are (1) *Respondent's Motion to Transfer* ("Bureau's Motion to Transfer") (Docket No. 41) and (2) *Applicant's Opposition to Respondent's Motion to Transfer* (Docket No. 43). The question they present is: Should this Court transfer Toledo–Hernandez's habeas corpus case to

the Fifth Circuit Court of Appeals? This Court believes it should and therefore GRANTS Bureau's Motion to Transfer.

## BACKGROUND

A brief chronology of this case should suffice as background for this order. It is as follows:

- July 15, 1997: The Bexar County District Court convicts Toledo–Hernandez, a Mexican citizen, of aggravated assault with a deadly weapon.
- January 28, 2003: The Board of Immigration Appeals affirms an Immigration Court order requiring Toledo–Hernandez to be removed from the country.
- August 11, 2003: The Bexar County District Court vacates Toledo–Hernandez's aggravated assault conviction (which he had challenged through a habeas corpus petition) on the ground that it was obtained in violation of his constitutional rights.

- August 18, 2003: Toledo–Hernandez files a habeas corpus petition with this Court challenging his removal order.
- May 21, 2004: This Court enters a final judgment granting Toledo–Hernandez's habeas corpus petition and vacating the removal order.
- May 25, 2004: This Court "reopen[s]"[1] Toledo–Hernandez's case "for purposes of reconsider[ing] ... [this Court's] final judgment"[2] in light of the Fifth Circuit's decision in *Discipio v. Ashcroft.*[3]
- August 17, 2005: Bureau files Bureau's Motion to Transfer.

## DISCUSSION

The REAL ID Act of 2005,[4] enacted by Congress on May 11, 2005 and the subject of impassioned criticism by learned commentators,[5] governs the question here. In pertinent part, it states, "If an alien's case

---

1. *Order Noticing Reconsideration* (Docket No. 35).

2. *Order Noticing Reconsideration* (Docket No. 35).

3. 369 F.3d 472 (5th Cir.2004), *vacated by* 417 F.3d 448 (5th Cir.2005).

4. Pub.L. No. 109–13, Div. B., 119 Stat. 231, 302 (May 11, 2005).

5. *See, e.g., Enwonwu v. Chertoff,* 376 F.Supp.2d 42, 82–85 (D.Mass.2005) (J. Young) ("[T]he REAL ID Act is actually intended to, and has the practical effect of, 'rights stripping.' ... [T]he executive has already filed motions to transfer several of those actions to the First Circuit. These petitioners are now without the benefit of the district courts' experience in conducting searching evidentiary hearings and listening to their first hand narratives. Instead, they will each now be afforded their one day in the courts of appeals, judicial bodies more accustomed to reviewing cold records for legal

error than hearing testimony and evaluating evidence. One has to wonder if the REAL ID Act's jurisdiction limiting provisions will make even constitutionally meritorious cases ... harder to win. The REAL ID Act imposes a chokehold on the free and proper exercise of the writ of habeas corpus. But it does more. It reveals the drafters' deep distrust of the district courts, the nation's sole jury trial court.... If one estimates that in the entire United States there are but 1,000 such cases now to be transferred to start afresh in the twelve courts of appeals, then the waste of the taxpayers' money approximates $25,000,000.00. This is a high price to pay for congressional distrust of a district court judiciary thought to be 'too soft on immigrant aliens.' Although Congress is empowered to limit the district courts' jurisdiction, both Congress and the courts are limited in how they may restrict the availability of habeas corpus. Such writ is constitutionally protected. Thus, courts must be cognizant that interpreting the REAL ID Act to pinch too tightly on access to the writ may create significant constitutional concerns.") (internal quotation marks, alterations, and citations omitted).

... challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case ... to the court of appeals for the circuit in which a petition for review could have been properly filed...." [6] Thus, it requires this Court to transfer Toledo–Hernandez's case to the Fifth Circuit if two requirements are met: (1) The case is "an alien's case ... challenging a final administrative order of removal, deportation, or exclusion"; and (2) The case was "pending ... on the date of the enactment of this division" (May 11, 2005). The first requirement is easily satisfied; Toledo–Hernandez is a Mexican citizen, and his habeas corpus petition challenges the Immigration Court's removal order. The dispositive question, then, is whether Toledo–Hernandez's case was pending on May 11, 2005.

This Court finds that it was. On May 21, 2004, this Court entered a final judgment in Toledo–Hernandez's case that rendered it not pending as of that date. Four days later (on May 25, 2004), however, this Court filed an *Order Noticing Reconsideration* that "reopened" his case "for purposes of reconsideration." This order rendered his case pending again.[7] A case is "pending," after all, when a Court still has to issue a final decision on it. And here, the very text of the *Order Noticing Reconsideration* indicates that this Court planned to issue a final decision in Toledo–Hernandez's case. The order stated, "[T]he Court will reconsider the Order granting Petitioner's writ of habeas corpus and *reconsider the final judgment.*"[8] Indeed, the order did not even take a tentative tone with respect to this plan. It stated quite definitely, "[T]he Court *has decided* to reconsider the relief previously granted."[9] Thus, it cannot be argued that this Court was merely *thinking* of issuing a new final decision. Nor did the order evidence any intent to keep the case closed until the Court announced its final decision. It plainly stated, "It is hereby ORDERED that the cause be *reopened* for purposes of reconsideration."[10] Thus, it also cannot be argued that the case remained closed on May 11, 2005 despite the Court's having announced it decision to reconsider it on May 25, 2004.

The simple fact is that on May 25, 2004, this Court intended to issue a final decision on Toledo–Hernandez's case and reopen it pending that decision. The text reveals these intentions, and the Court's own recollections confirm them. Therefore, this Court finds that Toledo–Hernandez's case was pending on May 11, 2005. And ac-

---

6. Pub.L. No. 109–13, Div. B, Title I, § 106(c), 119 Stat. 231, 311 (May 11, 2005).

7. *Order Noticing Reconsideration* (Docket No. 35). To be fair, Toledo–Hernandez makes the best argument he can that the *Order Noticing Reconsideration* did not make his case "pending" again. *See Applicant's Opposition to Respondent's Motion to Transfer* (Docket No. 43) at 3 ("The May 25, 2004 notice that the judgment may be amended or altered has no effect on the finality of the May 21, 2004 judgment as the May 25, 2004 notice did not have the effect of a Rule 59 motion. Instead, the May 25, 2004 notice effectively served to put the parties on notice that the Court may alter the judgment pending the outcome in

*Discipio.* This in effect is more like a notice of the possibility of Rule 60 relief rather than a Rule 59 motion altering the judgment. The May 25, 2004 notice did not alter the judgment in any way, but instead simply put the parties on notice that an alteration may be forthcoming."). The weight of the arguments, however, is against him.

8. *Order Noticing Reconsideration* (Docket No. 35) (italics supplied).

9. *Order Noticing Reconsideration* (Docket No. 35) (italics supplied).

10. *Order Noticing Reconsideration* (Docket No. 35) (italics supplied).

cordingly, it transfers his case to the Fifth Circuit Court of Appeals.

## CONCLUSION

This Court GRANTS *Respondent's Motion to Transfer* (Docket No. 41) and ORDERS this case transferred to the United States Court of Appeals for the Fifth Circuit.